UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMIKA KEATHLEY,

    Plaintiff,

v.

GRANGE INSURANCE
COMPANY OF MICHIGAN,

    Defendant.
_____/

Case No. 15-cv-11888

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

## OPINION AND ORDER DENYING PLAINTIFFS' AMENDED (AND RENEWED) MOTION FOR SANCTIONS (ECF NOS. 60, 65)

This is a property loss case in which Plaintiff argues that Defendant Grange Insurance Company of Michigan ("Grange") destroyed photographs of the damage to Plaintiff's home caused by frozen and burst pipes that allegedly were taken by Grange's insurance adjuster, Jason May. In compliance with an Order of this Court issued in response to Plaintiff's first motion for spoliation sanctions, Grange produced an information technology employee from Grange for deposition regarding the allegedly missing photographs. Still unsatisfied with Grange's explanation regarding the allegedly missing photographs, Plaintiff renewed her motion for spoliation sanctions. (ECF No. 60, Amended Renewed Motion for Spoliation Sanctions.) The

1

Court held a hearing on the spoliation motion on September 13, 2017, and ordered that Grange comply with further limited requests for additional information regarding Grange's claims handling and equipment retention policies. Grange has complied with the Court's instructions issued at the September 13, 2017 hearing, but Plaintiff remains unsatisfied with Grange's response and has filed a Second Renewed Motion for Sanctions. (ECF No. 65.) Grange responded to the renewed motion (ECF No. 66) and Plaintiff has filed a reply (ECF No. 67). For the reasons that follow, the Court DENIES the motion for spoliation sanctions.

## I.   BACKGROUND

This is an insurance loss case involving Plaintiff's claim under her Grange policy for an alleged loss suffered by claimed water damage to her home in or about late January or early February, 2014. Although discovery has closed, the parties continue to debate whether Plaintiff is entitled to spoliation sanctions based upon Grange's conduct in allegedly destroying or failing to preserve photographs allegedly taken by its insurance adjuster, Jason May. Plaintiff claims that these allegedly spoliated photographs would have established the existence of numerous "burst pipes" and would have substantiated her claim of extensive damage in her home.

As relevant to the motion for spoliation sanctions, Jason May testified that when he first spoke to Plaintiff's public adjuster, Margie Banks, sometime in April,

2

2014, regarding Plaintiff's claim, Ms. Banks explained that Plaintiff had suffered water damage at her home, that the drying and mitigation of the home was complete, and that repairs were nearly complete. (ECF No. 67, Pl.'s Reply Ex. EE, March 22, 2016 Deposition of Jason May 14:13-17:5.)[1] Mr. May did visit the home on May 28, 2014 and photographed every room. He testified that he met Plaintiff at the home along with Margie Banks, Plaintiff's public adjuster, and Joe Tison, Plaintiff's contractor. They walked through every room and Tison explained the work that had already been performed on the home. The home appeared to have been remodeled and any damage allegedly relating to Plaintiff's claim had been repaired. May noted in his claim file notes that he could not do a preliminary estimate due to "no observable damage." (May Dep. 28:11-30:5, 73:4-10, 74:1-3, 77:24-79:3.) May testified that he uploaded all of the photographs from his digital camera to Grange's claims handling system, the "CHIP" system. He testified that he would routinely upload his claim notes and any photographs he did take to the CHIP system. (May Dep. 37:23-39:14.) Mr. May recalled viewing the photographs he had taken at Plaintiff's home and uploaded to CHIP after the upload. (May Dep. 39:22-40:3.) Following his inspection at the home, Mr. May recalled that Grange was unable to

---

[1] It is undisputed that the loss occurred sometime in late January or early February, 2014, but Plaintiff did not report the loss to Grange until early April, 2014. (Pl.'s Reply Ex. EE, May Dep. 42:3-7, 57:18-22.)

3

verify the damage based on Mr. May's inspection and needed more information on the claim, including the mitigation documents, repair estimates, photographs of the damage and any information that Mr. Tison could provide regarding the repairs that had been performed because Grange was not given the opportunity to inspect the claim prior to the repairs. (May Dep. 40:4-41:21.) Mr. May acknowledged that he was told by Banks that pipes had burst but he testified repeatedly that he did not see evidence of burst pipes and specifically did not see a pile of burst pipes in the basement and therefore did not take any photographs of burst pipes or "a pile" of burst pipes. (May Dep. 47:12-24, 83:12-19.)

Contrary to Mr. May's testimony, Mr. Tison, Plaintiff's contractor who performed the remediation work and gave Mr. May a history of the repairs, testified that he always left burst pipes on site and in this case he made a "big pile" of pipes in the Plaintiff's basement and covered it up "so the adjustor could see it." (Pl.'s Reply, Ex. FF, March 16, 2016 Deposition of Joseph Tison 18:4-10.) Mr. Tison also testified that he specifically recalled Mr. May taking a lot of photographs, "doing his job," and specifically recalled that Mr. May took photographs of the visqueened pile of "contaminated" debris that included burst copper pipes. (Tison Dep. 53:5-55:8.) After Mr. May's visit, Mr. Tison testified, he removed the "debris" including the burst pipes and put it all in a dumpster. (Tison Dep. 55:9-18.)

Plaintiff's theory of spoliation appears to be that Mr. Tison's testimony establishes that Mr. May did indeed photograph a pile of burst pipes and that those photographs were uploaded to the Grange claims handling system by Mr. May and later deleted by Grange in an effort to sabotage Plaintiff's claim. The Court has supported Plaintiff's attempt to develop this theory, giving Plaintiff an opportunity (despite the fact that discovery had closed) to depose an information technology representative from Grange and subsequently requiring Grange to provide additional information requested by Plaintiff that appeared not to have been conclusively established to Plaintiff's satisfaction by the information technology representative's deposition testimony. The matter is now ready for resolution by the Court.

## II. STANDARD OF REVIEW

Spoliation of evidence is an evidentiary issue and is governed by federal law in this Circuit. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). "[T]he authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, from a court's inherent power to control the judicial process." *Id.* (internal quotation marks and citation omitted). To be entitled to an adverse inference instruction based on the destruction of evidence, Plaintiffs "must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and

5

(3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. United States DOJ*, 622 F.3d 540, 553 (6th Cir. 2010) (*quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). "'The test prescribed in *Beaven* is conjunctive; thus, so long as the district court did not err in determining that [the party seeking an adverse inference instruction] had not satisfied at least one of the prongs, its determination that a spoliation sanction was not warranted should not be upset.'" *Ross v. American Red Cross*, 567 F. App'x 296, 302 (6th Cir. 2014) (quoting *Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 2012)). Where material is destroyed in the normal course of business and without evidence of a culpable motive, spoliation sanctions generally are not appropriate. *Parrish v. Dollar Gen'l Corp.*, 680 F. App'x 423, 427 (6th Cir. 2017).

## III. ANALYSIS

As Ordered by this Court, Grange produced an information technology administrator for deposition. (ECF No. 58, March 30, 2017 Order Requiring Discovery.) Grange produced Mr. James Stewart, Grange's lead programmer analyst, for a deposition on April 24, 2017. (ECF No. 59-2, April 24, 2017 Deposition of James W. Stewart.) Mr. Stewart testified about Grange's Claims Handling Information Program (the "CHIP" system) onto which Grange adjusters upload data,

6

including photographs, related to claims investigation and processing. (Stewart Dep. 9:20-10:10.) CHIP is a client server technology that is present on individual employees's work stations, either their laptops or their desktops. Entries made into CHIP by a claims adjuster like Jason May, the Grange employee assigned to investigate Plaintiff's claim, are stored on a central server that is backed up nightly and weekly. Data that is stored on the central server is only retained for about 30 days, so something that was placed on the central server through CHIP by Mr. May in 2014 would no longer be in existence on CHIP. (Stewart Dep. 14:7-16:2, 18:1-19:11.)

Once data is logged into CHIP by a claims adjuster, it cannot be deleted from CHIP. Photographs that are inputted into CHIP are not stored in CHIP. Photographs are stored in a product called a Content Manager. (Stewart Dep. 21:13-23:18.) The Content Manager which stores the photographs is maintained on a server running an IBM software database. Every photograph that is placed into the Content Manager through CHIP creates a "pointer" – which is like a hyperlink to that photograph. A claims adjuster like Jason May would upload a photograph from their digital camera or their phone, then drag and drop that photograph wherever they want it to appear in their claim file on CHIP, click "save," and then CHIP will commit the photograph to the Content Manager and save a pointer to that photograph on CHIP. (Stewart Dep.

7

23:19-24:13.) A photograph that is uploaded to the Content Manager remains there for a period of eight years, unless it is deleted. (Stewart Dep. 58:25-59:15.)

The Content Manager is an imaging system and once a photograph is put into the Content Manager, only one individual at Grange, Richard Gruly, the Content Manager Administrator, is able to delete material from the Content Manager. (Stewart Dep. 22:25-23:12.) While Mr. Gruly has the ability to delete a photograph from the Content Manager, he does not have the ability to delete the pointer to that photograph in CHIP that was created when it was logged. (Stewart Dep. 23:13-22.) If a photograph is deleted from the Content Manager, a pointer will still exist in CHIP but will no longer be an operable link – i.e. if clicked on the pointer will give an error message indicating that the pointed-to photograph no longer exists in the Content Manager. A pointer that is created in the CHIP system cannot be deleted from the CHIP system without the deletion appearing in a file called "logical deletes," which keeps a permanent record of every deletion of a pointer in CHIP. (Stewart Dep. 21:22-23:18.) "Logical deletes" are typically done by business managers who delete spam and other irrelevant materials. (Stewart Dep. 31:15-32:25.)

Mr. Stewart does not interface with the Content Manager, and cannot delete materials from the Content Manager, but he was able to personally do a search of the Content Manager for photographs related to the Keathley claim by policy number and

claim number. His search revealed no photographs that were not already part of the claim file, with pointers that had been identified in CHIP. (Stewart Dep. 25:1-18.) Mr. Stewart testified that he spoke with Mr. Gruly while he was doing his search of the Content Manager to discuss generally Mr. Gruly's procedure for deleting photographs from the Content Manger. Mr. Stewart understood from Mr. Gruly that he only deleted photographs once a year in an annual "purge," and Mr. Stewart had no reason to believe that Mr. Gruly would ever have specially deleted photographs from an individual claim file. But Mr. Stewart never told Mr. Gruly that they were looking for photographs from the Keathley file, never specifically asked Mr. Gruly whether he had deleted any photographs from the Keathley file, and Mr. Gruly did not participate in the search for the missing photographs. (Stewart Dep. 29:10-31:1.)

With regard to Grange's procedures for dealing with a departing employee's equipment, Mr. Stewart did not speak with anyone specifically about what was done with Mr. May's computer back in 2014 when he left Grange, but he did investigate and was able to testify regarding the procedure that is generally followed with regard to a departing employees laptop, camera or other equipment. Cameras are turned in to Angie White at Grange's home office for her to reuse or dispose of – to this day, Ms. White has never reused a camera. Ms. White did not recall Mr. May or what happened to his camera but it would have been dealt with in the usual manner.

9

(Stewart Dep. 34:20-36:7.) Ms. White has never examined a used camera to determine its contents before making the decision to recycle the camera of dispose of it. Mr. Carr was present in the office with Mr. Stewart and Ms. White when Ms. White explained the process for dealing with cameras. (Stewart Dep. 36:8-20, 39:16-41:25.)

With regard to personal computers, Mr. Stewart spoke with Aaron Metheny, from Grange's information technology department about the process for dealing with departing employee's personal computers. Personal computers are put on a shelf for a 30-day hold period and then after that period a determination is made whether the hardware is reusable or needs to be recycled. Mr. Stewart did not ask Mr. Metheny specifically about Mr. May's computer or laptop and did not determine what exactly happened to Mr. May's computer when he returned it to the IT department. (Stewart Dep. 37:14-39:15.) Mr. Stewart's responsibilities do not include tracking assets so he has no knowledge of what exactly happened to Mr. May's laptop, PC, or camera when Mr. May left Grange. (Stewart Dep. 53:5-55:9.)

Mr. Stewart was able to verify through his investigation that for every photograph he identified in the Content Manager, he was able to identify a corresponding pointer in the CHIP. Also, it was established through Mr. Stewart's testimony that pointers cannot be deleted without a trace being left in the logical

deletes and there were no such traces relevant to the Keathley claim. Seemingly left unanswered by Mr. Stewart's testimony was whether every pointer in CHIP had a corresponding photograph in the Content Manager. As discussed *supra*, if a photograph has been deleted from the Content Manager, the pointer (a type of hyperlink) in CHIP will not activate and will display an "error" message. As part of his search for the missing photographs, Mr. Stewart did not actually click on the pointers in CHIP to determine whether or not they were active and pulled up a corresponding photograph in the Content Manager. Accordingly, at the conclusion of the September 13, 2017 hearing, Grange agreed to confer with Plaintiff's counsel and make arrangements to attempt to address any lingering unanswered issues. Plaintiff thus was afforded another opportunity, although discovery had closed, to direct targeted questions to Grange, to which Grange agreed to attempt to respond.

Grange has now produced evidence that answers this question. First, Grange has produced undisputed evidence that Mr. Stewart located each and every pointer that was generated when Mr. May uploaded a document or a photograph to CHIP from May 24, 2014 (just days before Mr. May inspected the Plaintiff's property and took photographs) through the end of his employment in October, 2014. (ECF No. 66, Def.'s Resp. to Renewed Mot. for Sanctions Ex. 1, October 31, 2017 Affidavit of James W. Stewart ¶ 4.) Grange has produced a spreadsheet identifying each pointer

11

by document identification number and the claim number to which the pointer relates. (*Id.* ¶ 5, Ex. A.) Second, Grange has produced the Affidavit of Joshua Durbin, a Grange Claims Services Manager, who personally tested the functionality of each pointer listed on the spreadsheet compiled by Mr. Stewart and confirmed that each of the pointers functioned properly and did retrieve the corresponding documents and/or photographs. (Defs.' Resp. Ex. 2, October 31, 2017 Affidavit of Joshua Durbin ¶ 3.) Mr. Durbin further reviewed each document and photograph retrieved and provided the descriptions of each item listed in the "Description" column on the spreadsheet. (Durbin Aff. ¶ 4.) Mr. Durbin was able to determine that the pointers and corresponding documents and/or photographs described in rows 58 to 74 of the spreadsheet relate to Plaintiff's claim. (Durbin Aff. ¶ 5.) Mr. Durbin attaches each of the documents and/or photographs corresponding to the pointers in CHIP that pertain to the Plaintiff's claim. (Durbin Aff. ¶ 6, Ex. B.) Each of the documents attached as Exhibit B to Mr. Durbin's Affidavit contains a Bates number because of each of these documents and/or photographs was previously produced to the Plaintiff by Grange in this litigation. (Defs.' Resp. Ex. C, Nov. 13, 2017 Correspondence from Jason Walker to Anthony Brouzas at 2.)

Thus, if Mr. Gruly (the only Grange employee who can delete photographs from the Content Manager) had deleted a photograph from the Keathley claim file that

had been uploaded by Mr. May, the pointer corresponding to that claim would have been non-functional and would not have retrieved a corresponding photograph or document. Mr. Durbin's Affidavit establishes that each pointer in CHIP that was created as a result of a document or photograph placed in CHIP by Mr. May was active, and did retrieve a corresponding photograph or document when activated. This corroborates the evidence revealed by Mr. Stewart's initial investigation that revealed no notes in the Keathley claim log identifying a photograph as deleted and no pointer in the "doc deleted document" list indicating that a photograph had been deleted. Taken together, Grange has submitted undisputed proof that Grange did not delete or destroy any photographs that Mr. May uploaded to CHIP. Absent evidence of such a deletion, either through a notation in the doc deleted file or a non-functional pointer, then it follows that the photographs that Plaintiff claims Mr. May took were not deleted or were never uploaded to CHIP. In either case, there is no evidence that Grange intentionally deleted the allegedly damaging photographs from CHIP. Indeed, the evidence affirmatively establishes that no photographs that were uploaded by Mr. May were deleted by anyone at Grange.

Not satisfied with this follow-up evidence, Plaintiff continues to press for spoliation sanctions, arguing that this evidence "still does not legitimately explain the absence of May's photos from the claims system." (ECF No. 67, Pl.'s Reply 1.)

13

Plaintiff continues to point to May's deposition testimony in which he testifies that he did upload the photos that he took at Plaintiff's home to Grange's electronic claims filing system. (*Id.* at 2, PgID 3612.) And Plaintiff refers the Court back to Mr. Tison's testimony that Mr. May did take photographs of the pile of burst of pipes in Plaintiff's basement. (*Id.* at 3, PgID 3613.) While this may be sufficient evidence to create a genuine issue of material fact regarding whether May did in fact take photographs of a pile of burst pipes and whether he did attempt to upload those photographs to CHIP, it is now undisputed that no such photographs appeared in CHIP and that no photographs successfully uploaded by Mr. May were deleted from CHIP. This is not evidence suggesting Grange's culpable mental state in allegedly intentionally deleting from CHIP photographic evidence of a pile of burst pipes or any photographs of alleged damage to Plaintiff's home that had been taken and uploaded to CHIP by Mr. May.

Plaintiff also speculates in her Reply that evidence of the missing photographs may have remained on May's digital camera and/or laptop, which May turned in to Grange's Southfield, Michigan office according to company policy when he left Grange in the latter part of September. There is no evidence establishing or for that matter suggesting that the allegedly missing photographs remained on Mr. May's equipment – the only evidence regarding the whereabouts of the photographs is Mr.

14

May's testimony that he uploaded them to CHIP, as was his standard practice. But Plaintiff asserts that Grange should have offered further evidence specifically establishing that May's camera and laptop were "turned in and destroyed according to Grange's claims retention policy." (Reply 4, PgID 3614.) But it is the Plaintiff's burden to establish Grange's culpable destruction of evidence – not Grange's burden to affirmatively defend its handling of Mr. May's equipment. Grange has already submitted that Mr. May's camera and laptop would have been reformatted and/or destroyed according to standard company practices when Mr. May surrendered the equipment to Grange's Southfield office upon departing Grange. Plaintiff was aware, at the time of the September 13, 2017 hearing on Plaintiff's spoliation motion, that Mr. Stewart's deposition testimony did not specifically address how Grange handled the exact pieces of equipment surrendered by Mr. May. The parties agreed at that hearing, and the Court approved the arrangement, that Plaintiff's counsel could submit specific requests for information to Grange to address what Plaintiff believed were still unanswered questions and Grange would respond. There is no evidence that Plaintiff sought and was denied further information from Grange regarding the specifics of the disposition of Mr. May's camera and laptop. This is unsurprising as Plaintiff's central claim has been that photographs uploaded by Mr. May onto the CHIP system subsequently were intentionally deleted by Grange. That scenario has

15

now been foreclosed by the testimony of Mr. Stewart and Mr. Durbin and Plaintiff now pivots her focus to the alternative argument that Mr. May perhaps did not successfully upload the photos to CHIP and the photographs perhaps remained on Mr. May's camera and/or laptop, and that Grange must have intentionally destroyed the "burst pipe" evidence on that equipment. Mr. Stewart has already testified regarding the normal retention and destruction protocols for departing employee's laptops and cameras and Plaintiff has produced no evidence suggesting that those normal protocols were not followed with regard to Mr. May's camera and laptop. When material is destroyed in the normal course of business and without evidence of a culpable motive, spoliation sanctions are not appropriate. *Parrish*, 680 F. App'x at 427.

## IV. CONCLUSION

Plaintiff, her public adjuster, and her contractor, each had the opportunity (indeed Mr. Tison testified it was part of his job) to photograph the damage that Plaintiff claims is so central to her claim. Yet, none of them thought it important enough to document and retain this evidence for themselves. This is noteworthy!

The Court has been very lenient in affording Plaintiff every opportunity to establish her claim that Grange possessed such evidence and intentionally destroyed it in an effort to defeat Plaintiff's claim. The Court now concludes that Plaintiff has

failed to carry her burden to come forward with sufficient evidence establishing that Grange spoliated evidence. Accordingly, the Court DENIES Plaintiff's Amended (and Renewed) Motion for Sanctions. (ECF No. 60.) The Court also DENIES AS MOOT Plaintiff's Motion for Status on Pending Motion for Sanctions. (ECF No. 68.)

The Court will issue a new scheduling order setting forth dates for mandatory facilitation and the filing of dispositive motions in the event that facilitation is unsuccessful in resolving the case.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 21, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2018.

s/Deborah Tofil
Case Manager